FILED

1  Laurence M. Rosen, Esq. (SBN 219683)
2  THE ROSEN LAW FIRM, P.A.
   333 South Grand Avenue, 25th Floor
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com

6  Counsel for Plaintiff

7

2011 MAY 23  AM 11: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

8             UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA

10

11  JOE MIKUS, INDIVIDUALLY AND ON
12  BEHALF OF ALL OTHERS SIMILARLY      CASE No.: **CV11-4402**
    SITUATED,
13                                                 mmm (FFMx)
14             Plaintiff,
                                        CLASS ACTION
15       vs.                            COMPLAINT FOR
                                        VIOLATION OF THE
16                                      SECURITIES LAWS
    LONGTOP FINANCIAL TECHNOLOGIES
17  LIMITED, HIU KUNG KA (XIAOGONG
18  JIA), WAI CHAU LIN (WEIZHOU LIAN),  **JURY TRIAL
    DEREK PALASCHUK, THOMAS            DEMANDED**
19  GURNEE, ZUYUN XUE, AND YIFENG
20  SHEN,

21             Defendants.

22

23

24       Plaintiff Joe Mikus ("Plaintiff"), individually and on behalf of all other

25  persons similarly situated, by his undersigned attorneys, for his complaint against

26  Defendants, alleges the following based upon personal knowledge as to himself and

27  his own acts, and information and belief as to all other matters, based upon, *inter*

28  *alia*, the investigation conducted by and through his attorneys, which included,

among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Longtop Financial Technologies Limited ("LFT" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of LFT between June 29, 2009  and April 25, 2011, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws.

2.      Defendant LFT purports to provide software and information technology to the financial services industry in China.

3.      Defendant LFT does not directly employ most of its staff; rather, it hires them 80% of them employment agencies.

4.      95% of its staff is hired through Xiamen Longtop Human Resources Services Co.  Xiamen Longtop has no other business than to staff Defendant LFT.

5.      Xiamen Longtop is a related party.

6.      Defendants did not disclose that Xiamen Longtop is a related party.

7.      Defendants also intentionally concealed the Company's chairman Ka's and CEO Lin's previous "work experience".   This work experience included litigation by a company they founded against them for unfair business practices. Ka and Lin lost – they were found liable for unfair business practices.

8.      In addition, Defendants also made materially false and misleading statements about the Company by vastly overstating the Company's margins, which were much greater than those of any peer company.

---

Class Action Complaint for Violations of the Federal Securities Laws

9. On April 26, 2011, analyst firm Citron Research published a report on LFT. It alleged that LFT had concealed a related party transaction with Xiamen Longtop, that Ka and Lin had been found guilty of unfair trade practices, and that LFT's outsized margins – by far larger than those of any competitor – were a red flag.

10. Also on April 26, 2011, respected analyst John Hempton of Bronte Capital also published an article on LFT. Hempton questioned why a company with no capital needs and large cash reserves would make large secondary offerings.

11. LFT's stock price fell dramatically, from $25.54/share at closing on April 25, to $17.13/share at closing on April 27, 2011, about a 33% loss, on extraordinarily heavy trading volume, damaging investors.

12. On May 9, OLP Global, another analyst firm, published a more detailed report, setting forth a host of detailed allegations of the Company's frauds.

13. The OLP report was followed up by an updated report that same day by Citron that reiterated that Xiamen Longtop is a related party, and accused LFT of dramatically overstating its revenues.

14. On May 17, 2011, LFT initiated a trading halt in its shares pending material news.

15. On May 23, 2011, LFT issued a press release announcing (a) the resignation of the Company's CFO; (b) the resignation of the Company's auditor, Deloitte & Touche Tohmatshi CPA Ltd. ("Deloitte"); (c) an SEC inquiry; and (d) the formation of a special investigation.

16. According to the announcement, Deloitte had resigned because of among other things:

"(1) the recently identified **falsity of the Company's financial records in relation to cash at bank and loan balances (and possibly in sales revenue); (2) the deliberate interference by certain members of Longtop**

**management in DTT's audit process**; and (3) the **unlawful detention of DTT's audit files**.  DTT further stated that DTT was no longer able to rely on management's representations in relation to prior period financial reports, that continued reliance should no longer be placed on DTT's audit reports on the previous financial statements, and DTT declined to be associated with any of the Company's financial communications in 2010 and 2011."

## JURISDICTION AND VENUE

17.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R.  §240.10b-5).

18.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

19.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C.  § 1391(b)-(d) and under the rule of law announced in *Investors Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985).

20.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

21.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased LFT securities at artificially inflated prices during the Class Period and has been damaged thereby.

22.    Defendant LFT is a Cayman Islands company whose principal executive offices are at Flat A, 10/F., Block 8, City Garden, 233 Electric Road,

Class Action Complaint for Violations of the Federal Securities Laws

North Point, Hong Kong. Its China operations' principal office is located at 15/F, Block A, Chuangxin Building, Software Park, Xiamen, 361005, People's Republic of China ("PRC").

23.    LFT, through its subsidiaries, purports to provide software and information technology services for the financial services industry in the PRC.

24.    Beginning on October 25, 2007, the Company's American depositary shares ("ADS") were actively traded on the New York Stock Exchange ("NYSE") under the symbol "LFT."

25.    Defendant Wai Chau Lin ("Lin"), who is also referred to as Weizhou Lian, was at all relevant times the Company's CEO and a director.

26.    Defendant Hiu Kung Ka ("Ka"), who is also referred to as Xiaogong Jia, was at all relevant times the Company's Chairman of the Board.

27.    Defendant Derek Palaschuk ("Palaschuk") was and is the Company's CFO since September 2006.   Palaschuk is a Canadian Chartered Accountant. Palaschuk was also a director and the chairman of audit committee of another PRC-based company, Renren Inc. Palaschuk resigned as Renren's director just before Renren's $690.3 million IPO in the US.  His stated reason was to avoid bringing unwarranted attention to Renren.

28.    Defendant Thomas Gurnee ("Gurnee") was and is a director and chairman of the audit committee since January 2007.

29.    Defendant Zuyun Xue ("Xue") was and is a director and a member of the audit committee since October 2007.

30.    Defendant Yifeng Shen ("Shen") was and is a director and a member of the audit committee since October 2008.

31.    Ka, Lin, Palaschuk, Gurnee, Xue and Shen are collectively referred to as the "Individual Defendants."

32.    During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of LFT and its subsidiaries and affiliates,

was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

33. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with LFT, each of the Individual Defendants had access to the adverse undisclosed information about LFT's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about LFT and its business issued or adopted by the Company materially false and misleading.

## SUBSTANTIVE ALLEGATIONS

34. The Class Period begins on June 29, 2009 when the Company filed its annual report for the fiscal year ending March 31, 2009 with the SEC on Form 20-F ("2008 20-F.") The 20-F, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by defendants Lin and Palaschuk, who each attested both to the accuracy of the financial statements and that all fraud was disclosed.

35. On November 18, 2009, the Company filed a final prospectus with the SEC on Form 424B5 (the "November 16 Prospectus") for the sale of 3.7 million

ADSs, each ADS representing one ordinary share, with proceeds of $ 110,422,060 going to LFT.

36.     On July 16, 2010, the Company filed its annual report for the fiscal year ending March 31, 2010 with the SEC on Form 20-F ("2009 20-F.") The 20-F, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by defendants Lin and Palaschuk, who each attested both to the accuracy of the financial statements and that all fraud was disclosed.

37.     Each of these SEC filings contained materially false and misleading statements.

38.     Throughout the Class Period, Defendants vastly overstated the Company's margins , which were much greater than those of any peer company.

39.     Defendants also failed to disclose that its major HR staffing company Xiamen Longtop ("XLHRS") is a related party of LFT. Xiamen Longtop:

- Has as its sole customer LFT;
- Was formed in May of 2007, just months before LFT's IPO;
- Is LFT's largest line item expenditure by far, but was never mentioned in filings until the annual report filed July 2008;
- Has no website and does not seem to be soliciting any customers;
- Does not have any long-term contract with LFT, and LFT does not have to pay any penalties or minimums;
- Uses the same email server as LFT;
- Is located in the same building as LFT;

40.     As further evidence that Xiamen Longtop is a related party, LFT terminated the relationship when it was challenged.  Xiamen Longtop has not been soliciting any customers since losing their sole customer, LFT.

41.     Defendants also intentionally concealed the Company's chairman Ka's and CEO Lin's previous "work experience".  This work experience included

litigation by a company they founded against them for unfair business practices. Ka and Lin lost – they were found liable for unfair business practices.

## THE TRUTH BEGINS TO EMERGE

42.    On April 26, 2011, an analyst firm Citron Research published a report on LFT. The report claimed, among other things, that:

- LFT reports spectacularly high margins — much greater than any peer company. In the fiscal year March 2010 LFT reported gross margins of 69% and non-GAAP operating margins of 49%. Peers report gross margins between 15-50% and operating margins of 10-25% or even lower. The high margins are too good to be true.

- LFT failed to disclose that its HR staffing company - Xiamen Longtop Human Resources Service Co., Ltd. is a related party. As of March 31, 2010, 3235 of LFT's employees (76%) were provided by Xiamen Longtop.

- LFT's Chairman Ka and CEO Lin concealed their previous work experience in a company named Xiamen Dongnan Computer Co.

43.    The same day, respected analyst John Hempton of Bronte Capital published an article questioning why  LFT had made an over $120 Million secondary offering when it already had over $200 Million cash on hand.

44.    LFT's stock price fell dramatically, from $25.54/share at closing on April 25, to $17.13/share at closing on April 27, 2011, about a 33% loss, on extraordinarily heavy trading volume, damaging investors.

45.    On April 28, 2011, the Company held an investors' conference call joined by Defendant Palaschuk, Longtop's CFO, purporting to respond to Citron's report. LFT's stock price rose back to close at $22.56/share on April 29, 2011.

46.    On May 3, Hempton published another article, raising more red flags regarding LFT:

- LFT had allegedly previously claimed to provide a petabyte's worth of cloud-based storage service, an attractive line of business. But LFT does not actually provide a cloud based storage service:
  - o LFT did not build a cloud-based storage infrastructure;
  - o LFT did not build a petabyte data storage solution for anyone.
- Cloud computing is hugely capital intensive. But LFT managed to launch a cloud storage service at the petabyte level with almost no capital expenditure. Therefore, Hempton concluded that LFT had lied in the press release.

47.     Thereafter, another analyst firm, OLP Global, also published a more detailed report, setting forth a host of detailed allegations calling into question the Company's true financial condition.

48.     Also on May 9, 2011, Citron published a follow-up report, providing further evidence of the related-party relationship between LFT and Xiamen Longtop. It offered two alternative accounts:

> Longtop Human Resources (XLHRS) is and was always a related party to Longtop Financial, essentially a captive entity created to hide expenses of Longtop Financial, and/or underpay employee benefits. They never in fact paid LFT employees as stipulated by SEC filings and press releases, but rather were always a vehicle to hide off balance sheet transactions.

> [Or] Longtop Financial is a fraud of massive proportion that does not operate nearly on the scale that they claim … either way, Longtop Human Resources is still a related party.

49.     The series of reports caused LFT's stock price drop again to $18.54/share at the close of trading on May 9, 2011.

50.     On May 10, 2011, the Company issued a statement in response to the Citron and OLP reports, claiming that Xiamen Longtop is not a related party, and that the Company was not committing fraud.

51.   In response, LFT's s stock price recovered to about $20/share at the closing of trading – still down from its pre-revelation high of $25.54.

52.   When the market closed on May 16, 2011, LFT's stock price was 18.93/share, further damaging the investors.

53.   On May 17, 2011, trading in LFT's shares was halted pending release of material news.

54.   On May 23, 2011, the LFT issued a press release announcing (a) the resignation of the Company's CFO; (b) the resignation of the Company's auditor, Deloitte & Touche Tohmatshi CPA Ltd. ("Deloitte"); (c) an SEC inquiry; and (d) the formation of a special investigation.  The announcement states in relevant part:

> Longtop Financial Technologies Limited Announces Resignation of Independent Auditor and Chief Financial Officer, Initiation of Independent Investigation, SEC Inquiry and COO Appointment
>
> **Press Release** Source: Longtop Financial Technologies Limited On Monday May 23, 2011, 5:00 am EDT
>
> HONG KONG, May 23, 2011 /PRNewswire-Asia/ -- Longtop Financial Technologies Limited ("Longtop" or the "Company") (NYSE:LFT - News) announced today that the Company's registered independent accounting firm, Deloitte Touche Tohmatsu CPA Ltd. ("DTT"), has resigned as auditor of the Company by letter dated May 22, 2011.  The Company also announced that Derek Palaschuk, the Company's Chief Financial Officer, tendered his resignation by letter, dated May 19, 2011, and the Board has taken his resignation under advisement.
>
> In its letter, DTT stated that it was resigning as the result of, among other things (1) the recently identified falsity of the Company's financial records in relation to cash at bank and loan balances (and possibly in sales revenue); (2) the deliberate interference by certain members of Longtop management in DTT's audit process; and (3) the unlawful detention of DTT's audit files.  DTT further stated that DTT was no longer able to rely on management's representations in relation to prior period financial reports, that continued reliance should no longer be placed on DTT's audit reports on the previous financial statements, and DTT declined to be associated with any of the Company's financial communications in 2010 and 2011.

Longtop's Audit Committee has retained US legal counsel and authorized the retention of forensic accountants to conduct an independent investigation into the matters raised by DTT's resignation letter. The Audit Committee has also initiated a search for a new auditor. Further, Longtop was advised by the United States Securities and Exchange Commission ("SEC") that the SEC was conducting an inquiry regarding related matters. Longtop intends to cooperate fully with the SEC's inquiry.

Longtop is unable to determine the full effect of these matters, including whether any restatement of its historical financial statements will be required, until the Audit Committee completes its review. Longtop cannot predict when it will announce its financial results for Q4 2011, or when it will file its Form 20F for the fiscal year ended March 31, 2011.

Further, the Company announced that Wei Dong, Senior Vice President since April 1, 2009, assumed the responsibility of Chief Operating Officer of the Company.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of LFT during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, LFT's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by LFT or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of LFT; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## Applicability of Presumption of Reliance:
## <u>Fraud-on-the-Market Doctrine</u>

61.    At all relevant times, the market for LFT's common stock was an efficient market for the following reasons, among others:

(a)    LFT's stock met the requirements for listing, and is listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     During the class period, on average, over several hundreds of thousands of shares of LFT stock were traded on a weekly basis, demonstrating a very active and broad market for LFT stock and permitting a *very strong* presumption of an efficient market;

(c)     As a regulated issuer, LFT filed periodic public reports with the SEC and was eligible and did file short form registration statements with the SEC on Form S-3 during the Class Period;

(d)     LFT regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     LFT was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in LFT stock at all times during the Class Period;  and

(g)     Unexpected material news about LFT was rapidly reflected and incorporated into the Company's stock price during the Class Period.

62.     As a result of the foregoing, the market for LFT's common stock promptly digested current information regarding LFT from all publicly available sources and reflected such information in LFT's stock price.   Under these circumstances, all purchasers of LFT's common stock during the Class Period suffered similar injury through their purchase of LFT's common stock at artificially inflated prices, and a presumption of reliance applies.

**FIRST CLAIM**
**Violation of Section 10(b) Of**
**The Exchange Act Against and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

63.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.    This claim is brought against LFT and all of the Individual Defendants.

65.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase LFT's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for LFT's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

67.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of LFT as specified herein.

Class Action Complaint for Violations of the Federal Securities Laws

68.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of LFT's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about LFT and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of LFT's common stock during the Class Period.

69.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

70.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such

facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing LFT's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of LFT's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of LFT's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired LFT common stock during the Class Period at artificially high prices and were or will be damaged thereby.

72.   At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding LFT's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their LFT common stock, or, if they had acquired such common stock

during the Class Period, they would not have done so at the artificially inflated prices that they paid.

73.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

75.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

76.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.    The Individual Defendants acted as controlling persons of LFT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and

had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

78.    In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.    As set forth above, LFT and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

80.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

81.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Awarding such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 23, 2011                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

18

Name & Address:
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE MIKUS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF(S)<br><br>v.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, HIU KUNG KA (XIAOGONG JIA), WAI CHAU LIN (WEIZHOU LIAN), DEREK PALASCHUK, THOMAS GURNEE, ZUYUN XUE, AND YIFENG SHEN,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV11-4402-MMM(FFMx)<br><br><br>SUMMONS |

TO:   DEFENDANT(S): _____
      _____

   A lawsuit has been filed against you.

   Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Laurence M. Rosen_____, whose address is _333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                        Clerk, U.S. District Court

Dated: __MAY 2 3 2011_____      By: _____
                                        SEAL
                                        MARILYN DAVIS
                                        Deputy Clerk

                                        (Seal of the Court)

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)]._

CV-01A (12/07)                          SUMMONS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV11- 4402 MMM (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) JOE MIKUS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | DEFENDANTS LONGTOP FINANCIAL TECHNOLOGIES LIMITED, HIU KUNG KA (XIAOGONG JIA), WAI CHAU LIN (WEIZHOU LIAN), DEREK PALASCHUK, THOMAS GURNEE, ZUYUN XUE, AND YIFENG SHEN, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Laurence M. Rosen, Esq. (SBN 219683), THE ROSEN LAW FIRM, P.A. 333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071, T: (213) 785-2610, F: (213) 226-4684 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No          ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Securities Fraud Class Action, 15 U.S.C. §78j(b) and 78t(a), 17 C.F.R. §240.10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | FORFEITURE / PENALTY | | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 610 Agriculture | | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | CIVIL RIGHTS | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 441 Voting | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 442 Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 443 Housing/Acco-mmodations | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 444 Welfare | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV11-4402**

FOR OFFICE USE ONLY:     Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
  ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Texas |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | People's Republic of China |

(c).  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date May 23, 2011

  Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 2 of 2